**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tempe Hospitality Ventures, LLC, | No. CV-22-00647-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Highgate Hotels, L.P., | |
| Defendant. | |

On April 18, 2022, Plaintiff Tempe Hospitality Ventures, LLC, filed this action against Highgate Hotels, L.P. (Doc. 1). Plaintiff's Complaint asserts claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) breach of fiduciary duties, and (4) a declaratory judgment from this Court as to the enforceability of the Arbitration Provision. (Doc. 1 at 7-10).

In February 2020, Plaintiff and Defendant entered into a Hotel Management Agreement ("HMA"). (Doc. 1 at 2). Article 23 of the HMA titled "Dispute Resolution" contains the Arbitration Provision, which states in relevant part in Section 23.2: "Except for (i) those disputes subject to resolution by an Expert, and (ii) those matters set forth in Section 23.3.7 below, the Parties shall resolve all disputes that may arise in connection with this Agreement through final and binding arbitration (without appeal or review) . . . ." (Doc. 9-1 at 9). The HMA goes on to outline various arbitration procedures and incorporates the Commercial Arbitration Rules of the American Arbitration Association (the "AAA rules") into the Arbitration Provision. (*Id.*).

The Defendant filed its Motion to Dismiss and Compel Arbitration or Stay Pending Arbitration based on Article 23 of the HMA. (Doc. 9). In response, Plaintiff argues: (1) the HMA was the product of an unfair bargaining process; (2) the cost of arbitration would exceed any potential recovery, deterring arbitration altogether; and (3) such a financial burden would be overwhelming due, in part, to Defendant's own mismanagement of the Property. (Doc. 15 at 4). More specifically, Plaintiff argues that the Arbitration Provision is unconscionable because it holds Plaintiff responsible for the fees and costs of the arbitrators and requires Plaintiff to pay Defendant's attorneys' fees and costs throughout the course of arbitration, all regardless of the outcome. (*Id*. at 2). This claim surrounds Section 23.3.4 of the HMA, which addresses the fees and costs of arbitration (*see* Doc. 9-1 at 10).

I. **Legal Standard**

The Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Courts must decide these questions "according to the standard used by district courts in resolving summary judgment motions pursuant to [Federal Rule of Civil Procedure ("FRCP")] 56." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011). If a district court finds that an "arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

"Arbitration agreements are presumptively enforceable under the FAA 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Taleb v.*

2

*AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *2 (D. Ariz. Nov. 13, 2006) (quoting 9 U.S.C. § 2). The FAA's saving clause, however, "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted). Thus, "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In determining the validity and enforceability of the agreement here, then, Arizona's law of contracts controls. *See Taleb*, 2006 WL 3716922, at *2.

## II.     Scope of the Arbitration Provision (HMA Art. 23)

Defendant argues that Plaintiff's challenge to Section 23.3.4 is not a challenge to the Arbitration Provision itself, but to the fee allocation provision of the HMA. (Doc. 9 at 2). Plaintiff, on the other hand, refers to this section as part of the Arbitration Provision. (Doc. 15 at 1). Upon review, the Court finds that Section 23.3.4 is part of the Arbitration Provision.

Arbitration clauses often include information about fees and costs. *See, e.g.*, *Green Tree Fin. Corp.-Ala. v. Rudolph*, 531 U.S. 79 (2000) (holding an arbitration agreement's *silence* as to fees and costs does not render it unenforceable); *Jones v. Gen. Motors Corp.*, 640 F.Supp.2d 1124 (D. Ariz. 2009) (reviewing a fee allocation provision); *Loyola v. Am. Credit Acceptance LLC*, No. 2:19-cv-00002-SMJ, 2019 WL 1601362 (E.D. Wash. Apr. 15, 2019) (reviewing a fee allocation provision). Under Arizona law, the Court adopts a construction that will "harmonize all parts of the contract," considering each provision in light of the entire instrument. *Brisco v. Meritplan Ins. Co.*, 132 Ariz. 72, 75 (Ariz. Ct. App. 1982) (citation omitted).

Here, it would be inconsistent to consider Section 23.3.4 as separate from the Arbitration Provision. Section 23.3.4 falls under Article 23 which is titled "Dispute Resolution." (Doc. 9-1 at 8-10). Section 23.2 mandates arbitration, but procedures and rules

elaborating on the arbitration process appear throughout Sections 23.2 and 23.3. (Doc. 9-1 at 9-11). In fact, the exceptions to mandatory arbitration cited in Section 23.2 appear in Section 23.3.7. (Doc. 9-1 at 11). In consideration of the entire instrument, the Court finds 23.3.4 to be part of the Arbitration Provision.

### III.     Arbitrability

"Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options,* 514 U.S. at 944 (1995) (citation omitted). "Clear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 79-80 (2010) (Stevens, J., dissenting). Even if a delegation of arbitrability is clear and unmistakable, it may be found unenforceable if the delegation itself is unconscionable. *Id.* at 71-74.

First, the Court considers whether there was clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Defendant argues that Plaintiff's claims are encompassed by the language of the Arbitration Provision which includes "all disputes that may arise in connection with [the HMA]." (Doc. 9 at 7 (citing section 23.2)). Defendant also argues that the AAA rules, which are incorporated in the Arbitration Provision, give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or *validity* of the arbitration agreement." (Doc. 9 at 8 (citing AAA Rule 7) (emphasis added)). On the other hand, Plaintiff asserts that section 23.3.7 creates an avenue for judicial involvement through an exception which states that "the Parties shall have the right to commence litigation or other legal proceedings with respect to any Claims solely relating to . . . enforcement of the dispute resolution provisions of this Agreement." (Doc. 15 at 12-13; Doc 15-2 at 33; Doc. 9-1 at 11). In response, Defendant argues that this section only allows the parties to commence litigation to enforce

the dispute resolution proceedings, not to challenge, contest, or question the enforceability. (Doc. 16 at 3).

"[I]n a contract between sophisticated parties, 'incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'" *Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1068 (9th Cir. 2020) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). Here, the AAA rules were explicitly incorporated into the Arbitration Provision in Section 23.2.2. The Court considers Mr. Singh, the owner of Tempe Hospitality Ventures who signed the HMA, to be a sophisticated party. Mr. Singh is a business owner who opened the first Indian restaurant in the Phoenix area in 1986 and acquired this Sheraton franchise in 2012. (Doc. 15 at 5). Since then, he has contracted with four different professional hotel management companies, including Highgate. (*Id*.). Because both parties are sophisticated, the incorporation of the AAA rules demonstrates the agreement to arbitrate arbitrability.

Moreover, the exception in section 23.3.7 cited by Plaintiff does not cast doubt on this issue. Section 23.3.7 states that parties have the right to use the courts for claims "solely relating to . . . *enforcement* of the dispute resolution provisions." (Doc. 9-1 at 11 (emphasis added)). Simply, enforcement means to compel compliance with an agreement. *Enforcement*, *Black's Law Dictionary* (11th ed. 2019). Given the plain meaning of enforcement, section 23.3.7 does not allow Plaintiff to bring a claim challenging or questioning the provision before the Court. The delegation of arbitrability to the arbitrator is clear and unmistakable.

When a Court finds a delegation of arbitrability to be clear and unmistakable, it may only consider generally applicable contract defenses like unconscionability if the Plaintiff has specifically challenged the delegation provision within the arbitration agreement. *Rent-A-Center*, 561 U.S. at 70-71. Here, Plaintiff's substantive unconscionability challenges are not specific to the delegation of arbitration. Instead, Plaintiff argues the Arbitration Provision is substantively unconscionable because the cost of arbitration would exceed any potential recovery, deterring arbitration altogether, and Plaintiff is unable to meet this

financial burden due, in part, to Defendant's own mismanagement of the Property. (Doc. 15 at 4). This challenge surrounds the fees and costs of arbitration, not the delegation of arbitrability. For that reason, the arbitrator, not this Court, must decide Plaintiff's unconscionability challenge, as well as the claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. *See Rent-A-Center*, 561 U.S. at 70-74 (stating "we need not consider that claim because none of [the defendant's] substantive unconscionability challenges was specific to the delegation provision," and that "[i]t may be held that had [the defendant] challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court."). Because the relief sought in this case is left to the arbitration tribunal, the Court will not stay the action but will instead compel arbitration and terminate this action.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration (Doc. 9) is **granted**.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment in favor of Defendant and terminate this action accordingly.

Dated this 2nd day of August, 2022.

Honorable Steven P. Logan
United States District Judge